UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:14-CR-74-01-LM |
| | ) | |
| JOSHUA FIELDS | ) | |

## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND SUPPORTING MEMORANDUM

NOW COMES Joshua Fields, Defendant, by and through his attorney, Jaye L. Rancourt and submits the following Motion for Compassionate Release and Supporting Memorandum of Law. Mr. Fields request that this Court grant this request for Compassionate Release and release him to Keystone Hall from where he may transition back into the community. In support of this request, he submits the following.

Mr. Fields' case presents this Court with unique circumstances related to a request for Compassionate Release. While Mr. Fields does not meet the criteria for Compassionate Release outlined in the applicable policy statements issued by the Sentencing Commission sections (A) through (C), Mr. Fields requests that this Court apply the "other reasons" criteria as outlined in U.S.S.G. § 1B1.13 (D) to his case as he believes that "there exists in the defendant's case an extraordinary and compelling reason other than...the reasons described in subdivisions (A) through (C). In *United States v. Fox*, 2:14-CR-03-DBH (United States District Court District of Maine, July 11, 2019), Judge Hornby of the United States District Court for the District of Maine found that the deference once afforded to the BOP in subsection (D) of the sentencing Commissions policy statement "no longer makes sense now that the First Step Act has reduced BOP's role." *Id.* Judge Hornby stated, "I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts." *Id.* This position has been

followed by other Courts as well. *See, United States v. Vigneau*, 97-cr-33-JJM-LDA (United States District Court for the District of Rhode Island, July 21, 2020) ("Because the Sentencing Commission's policy statement section 1B1.13 and Application Notes are now incompatible with the statute itself, the Court need not follow the outdated portion of this commentary that is contradictory to federal law."). As such, this Court has jurisdiction to determine whether extraordinary and compelling reasons exist to grant compassionate release without prior determination by the Director of the Bureau of Prisons.

The following extraordinary and compelling reasons way in favor of Mr. Fields' request for compassionate release:

1) The Bureau of Prisons has failed to follow this Court's previous Orders rescinding the 2014 PSR and substituting the 2016 PSR thereby placing Mr. Fields in danger;

2) After being directed to correct their mistake, the Bureau of Prisons failed to follow this Court's Orders and to correctly designate Mr. Fields, continuously placing him in a dangerous position;

3) The Bureau of Prisons actions, or inactions, have caused Mr. Fields to suffer physical assaults resulting in injury calling into question the Bureau of Prisons ability to keep Mr. Fields' safe;

4) The Bureau of Prisons actions, or inactions, have caused Mr. Fields to be subjected to unusually harsh conditions of confinement, including but not limited to solitary confinement, for an extended period of time, resulting in harm to Mr. Fields' mental health; and

5) The Bureau of Prisons actions, or inactions, have resulted in Mr. Fields inability to participate in rehabilitative efforts that would not only benefit him once transitioned out of the BOP but could also make him eligible for reduction of his sentence pursuant to the First Step Act.

Mr. Fields requests that he be released immediately to the Keystone Hall for treatment followed by transition into the community as probation and Keystone Hall recommend.

**Administrative Exhaustion**

Mr. Fields has petitioned to the Warden of the facility in which he was held to be released on Compassionate Release per 18 U.S.C. § 3582(c)(1)(A)(i). This request was made via Attorney Jaye Rancourt given that Mr. Fields had left the facility and was in transit to the State of New Hampshire to appear for a hearing at the time. *See*, Exhibit A. Such request was made by Attorney Rancourt on March 18, 2021. As of the date of this filing, 30 days has elapsed since the request has been made. The Warden has not responded to the request. Mr. Fields has therefore exhausted his administrative remedies.

**History of Case**

Mr. Fields pled guilty to a one count information charging him with being a felon in possession of a firearm. Mr. Fields was initially sentenced to fifteen (15) years of imprisonment followed by five (5) years of supervised release on October 16, 2014 as Mr. Fields qualified under the law at that time as an armed career criminal.

At the time of his original sentencing it was pointed out to this Court that Mr. Fields suffered from serious and prolonged mental health issues. Mr. Fields had been diagnosed with post-traumatic stress disorder, personality disorder, anxiety disorder, major depression, bipolar disorder, adjustment disorder, sleep disorder, and borderline personality disorder. T. Sentencing p. 7. Mr. Fields' mental health issues resulted in him being determined to be totally disabled. Id.

In 2016, the Court resentenced Mr. Fields in accordance with *Johnson* to 120 months (10 years) of imprisonment followed by 3 years of supervised release. At the time of Mr. Fields re-sentencing he raised, through his counsel, that he had been classified by the BOP as a sexual offender based upon one line contained within his PSR. This one line in the PSR was a description of a non-sexual assault. However, based upon this one line in the PSR, the BOP designated Mr.

Fields as a sexual offender.  The Court expressed concern regarding this designation as a sexual offender stating, "he needs mental health treatment.  He needs drug treatment.  He needs help.  And if he is going to be classified in this way incorrectly, it may hamper his ability to benefit from the treatment he so desperately needs."  T. re-sentencing, pp. 14-15.

The Court then issued an Order expunging the previous PSR and substituting a new PSR without the language previously relied upon by the BOP to designate Mr. Fields as a sexual offender.  The Order also directed the BOP to destroy the previous PSR and reclassify Mr. Fields.  See, Order 12/01/16.   The reason for the expungement of the previous PSR was due to Mr. Fields suffering harassment and physical abuse as a result of his designation as a sexual offender.  Further Mr. Fields was placed in solitary confinement or the SHU for the majority of his time in the Bureau of Prisons as a result of this designation.  Mr. Fields was being denied programming as a result of his placement in the SHU.  This Court's Order was issued on December 1, 2016.

Mr. Fields filed a motion in July of 2017 notifying the Court that the BOP, contrary to this Court's Order, had not reclassified Mr. Fields. See, Motion for Contempt of Court Order, 07/05/17.  Mr. Fields indicated to the Court that as a result of this classification other inmates in the Bureau of Prisons had made attempts to take his life.  As well he was subjected to threats, seclusion, and extortion by other inmates.  His rehabilitation had not occurred as a result of this classification.  Mr. Fields submitted documents demonstrating that he was still classified as a sexual offender.  The documents submitted to the Court by Mr. Fields demonstrated that he was still designated as a sexual offender in April of 2017 as indicated on his "inmate profile".  The Government filed an Objection to Mr. Fields motion thereby telling the Court that the sexual offender classification had been removed in 2016.  See, Government's Objection p. 2.  This was contrary to the evidence

provided to this Court by Mr. Fields.  Relying upon the evidence provided by the Government, the Court denied Mr. Fields request for relief.  *See*, Order 09/22/17.

From 2016 until January of 2021, Mr. Fields continued to file pleadings with the Court notifying the Court that BOP has not changed his designation and he remained in fear for his life. Specifically, in October of 2019, Mr. Fields wrote a letter to the Court indicating that his cell mate had attacked him.  His hand was broken.  His left eye was swollen shut and he had received stiches as a result of the assault.  This assault was caused by Mr. Fields cellmate believing that Mr. Fields was a sexual offender.    Mr. Fields remained housed in the SHU receiving no programming for his mental health or his substance abuse issues.  He indicated to the Court that he was continually placed in the SHU and was unable to participate in programming beyond a few classes that were offered.  He demonstrated his best efforts to participate in the programming that was offered.

Ultimately, the Court discovered around March 2021, that Mr. Fields had been accurately reporting his continued classification as a sexual offender.  Apparently the original PSR was not destroyed, as ordered by this Court, and was relied upon to re-classify him after 2016 to incorrectly designate Mr. Fields as a sexual offender.  Records provided by the BOP confirm that he has been continuously housed in the SHU with little to no treatment or rehabilitation.  See, Exhibt B (filed under seal).

### The Bureau of Prisons has failed to follow this Court's previous Orders rescinding the 2014 PSR and substituting the 2016 PSR thereby placing Mr. Fields in danger

Despite this Court's very clear Order of December 1, 2016, the Bureau of Prisons failed to properly destroy the 2014 PSR.  By failing to do so, the 2014 PSR remained in the Bureau of Prisons records.  This then resulted in Mr. Fields being subject to re-classification as a sexual offender in direct violation of this Court's Order.  This erroneous classification caused Mr. Fields to suffer physical injury and mental anguish.

Mr. Fields was subjected to physical assaults as a result of the BOP's failures. Specifically, he was attacked by his cellmate. He was repeatedly kicked in the head resulting in lacerations requiring stiches. When he attempted to shield his head from the blows he was kicked in the hand resulting in a broken hand. This assault occurred in the Secure Housing Unit at SHU. Mr. Fields was originally placed in the SHU as a result of threats and extortion by other inmates. These threats and extortions were because of his designation as a sexual offender. As a result of these assaults and threats, Mr. Fields was placed in the SHU with limited freedom and mobility. This placement in the special housing unit resulted in Mr. Fields not receiving the mental health and substance abuse treatment he so desperately needed.

Mr. Fields would not have been subjected to these assaults, threats, and mental anguish if the BOP had followed this Court's Order of December 1, 2016. There is not reason to believe that placing Mr. Fields back into BOP custody at this time would serve the ends of justice given their previous failures to follows Court Orders, properly designate Mr. Fields, and keep Mr. Fields safe while in their custody. To the contrary, the BOP has demonstrated that they will not. Mr. Fields has been designated to and traveled between eleven various BOP facilities in eight years. He has been designated to the SHU in the majority of these facilities as the institutions he is transferred to are have "active gang" yards and Mr. Fields is not safe as an alleged sexual offender.

The BOP has demonstrated that they will disregard Court Orders, fail to keep Mr. Fields safe, and fail to ensure that he will receive treatment that is necessary. If this Court were to return to Mr. Fields to BOP custody, there is little likelihood that the BOP will release Mr. Fields from his SHU housing designation and therefore little likelihood that he will receive treatment needed for both his substance abuse and mental health issues. Even if Mr. Fields were to return to BOP, his reputation among the other inmates would prevent him from being safe in general population.

There would not be adequate time for him to engage in any significant treatment even if treatment were available to him. By the time he re-enters BOP custody, if transferred to a factility and is possibly released from SHU, he will be close to his release date. The BOP has demonstrated that they will not follow this Court's direction for over five years. There is reason to believe that the Bureau of Prisons will simply warehouse Mr. Fields in the SHU and then release him upon his release date with no treatment or rehabilitation.

The BOP had a duty to keep Mr. Fields safe from attacks and violence by other inmates pursuant to the Eighth Amendment to the United States Constitution. *Larkin v. Barnhart*, 758 F.3d 66, 70 (1st Cir. 2014. An inmate, "may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection…from attack by other inmates." *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 63-64 (1stCir. 2002). The BOP has failed in its obligations to keep Mr. Fields safe. The BOP has failed to demonstrate that it will abide by any directive of this Court. The BOP has demonstrated that they will do nothing for Mr. Fields except warehouse him in the SHU until it is time for his release.

In imposing a sentence this Court takes into consideration the factors outline in 18 USC § 3553. Among those factors is the need to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 USC § 3553(a)(2)(D). As this Court noted, at the time of his resentencing, "he needs mental health treatment. He needs drug treatment. He needs help. And if he is going to be classified in this way incorrectly, it may hamper his ability to benefit from the treatment he so desperately needs." T. re-sentencing, pp. 14-15. That was true when this Court stated it in 2016 and it remains true today. As this Court also pointed out, Mr. Fields ability to participate in rehabilitative efforts also provides for the public safety. Unfortunately, as this Court also stated, "The Court has

7

ultimately failed Mr. Fields." T. March 1, 2021, p. 6. However, it is also true that the Bureau of Prisons has failed Mr. Fields and continues to fail Mr. Fields. There can be no expectation that returning Mr. Fields to BOP custody will result in anything different.

### The Bureau of Prisons actions, or inactions, have caused Mr. Fields to be subjected to unusually harsh conditions of confinement, including but not limited to solitary confinement, for an extended period of time resulting in harm to Mr. Fields mental health

The failure of the BOP to properly designate Mr. Fields has resulted in his confinement in the Special Housing Unit (SHU). As such he has been subjected to unusually harsh conditions of confinement which have caused harm to Mr. Fields mental health.

As has been found by numerous Courts, prolonged solitary confinement produces numerous deleterious harms. The United Nations Special Rapporteur on Torture has "called for a global ban on solitary confinement longer than 15 days." *Glossip v. Gross*, 135 S.Ct. 2726, 2765 (2015) (Breyer dissenting). In his dissent, Justice Breyer cited to an article, Mental Health Issues in Long-Term Solitary and "Supermax" Confinement, which found that solitary confinement can cause prisoners to experience, "anxiety, panic, rage, loss of control, paranoia, hallucinations, and self-mutilations."

In 2014, CNA Analysis & Solutions prepared a comprehensive review of the Federal Bureau of Prisons use of restriction housing units[1]. See, Exhibit C. The special housing unit is used for inmates who cannot be safely managed in the general population. Restrictive housing includes the use of the Special Housing Units (SHU), where Mr. Fields has spend the majority of his time while in BOP custody. USP Coleman I, where Mr. Fields was housed prior to his removal

---

[1] The full CNA report can be produced to the Court for its convenience. The full report is 242 pages. For the sake of this motion, counsel has included only excerpts from the full report as cited herein. Upon request of either the Court or the Government, the full report can be supplied.

to NH, was among the institutions selected for site visits in the CNA report.  Among the key findings of the CNA report were the following:

> -The Bureau does not have adequate non-punitive protective custody housing units that have equivalent levels of programs and privileges as general population inmates.
>
> -Mental health services in restrictive housing require improvement in three specific areas: (1) proper mental health diagnoses; (2) more effective treatment; and (3) providing sufficient psychiatric staffing.
>
> -There is no formal Bureau-wide reentry preparedness program specific to restrictive housing and inmates in these settings have very limited access to reentry programming.

Review pp. 228-236.

The comprehensive CNA Review found that "a disproportionate number of inmates are being housed in the SHUs based on protection claims." Review p. 82. Those placed in the SHU for protection are identified by BOP policy as a "non-punitive" status. However, while the policy may state that this status is non-punitive, the restrictions place on these inmates is the same as those placed on inmate in punitive segregation. The Review found, "the application of the same security and operational restrictions to the protective custody population as to others in administrative segregation is contrary to nationally accepted practices." Review p. 83. The Review found that "there is very little difference between the personal property of inmates assigned to administrative detention and disciplinary segregation with the exception of noted commissary items. This is problematic given that at some facilities the majority of administrative detention inmates are on protective custody status." Review, p. 196. A recommendation of the Review was "to expand housing alternatives for inmates in verified protective custody status to provide levels of programs and privileges equivalent to those provided for the general population." Review, p. 230. Reportedly, this has not occurred in USP Coleman between the issuance of the Review and

2014 and the time that Mr. Fields left the program in 2021. Mr. Fields reports that he had very limited programs and privileges, certainly not the same level as the general population inmates.

The Review team conducted independent mental health assessments of individuals identified to have mental health issues in the SHU, including inmates in the SHU in Coleman. "Based on the review of the inmate mental health records and the inmate interviews, the reviewers disagreed with the BOP diagnosis in nearly two thirds of the cases reviewed. The review further indicated that the treatment being offered by the BOP was insufficient or inappropriate in over half of the cases reviewed." Review, p. 117.

A review of Mr. Fields mental health records from Coleman confirm the lack of adequate assessment and treatment. First, the records fail to note the severity of Mr. Fields mental health issues and actually seem to disregard information provided to them in his PSR. The notes from Coleman continuously note, "No significant mental health issues" while also failing to provide any assessment of his mental health. See, Sealed Exhibit B. Despite being disabled because of his mental health issues and diagnosed with significant mental health issues in two separate psychological evaluations (PSR ¶92A), Coleman has assessed that he presents with no mental health issues that require any kind of attention from them other than a once a month check-in…as required by BOP regulations. No mental health treatment has been provided to Mr. Fields.

The PSR's prepared in Mr. Fields case note that two psychological evaluations had been performed on Mr. Fields. The diagnoses include: Borderline Personality Disorder, Adjustment Disorder with anxiety and depression and sleep disorder, Personality Disorder with antisocial and borderline features. See, PSR ¶¶ 91-92B. The second psychological evaluation mirrored much of the first and provided a primary diagnosis of personality disorder and anxiety related disorders.

See, PSR ¶ 92A.  Mr. Fields history in the NH Department of Corrections demonstrate an extensive

list of pschotropic medications attempted over the years to treat Mr. Fields mental health issues.

Mr. Fields mental health status has not been treated while incarcerated at the BOP and has

been compromised as a result of the inaction and failure to comply with Court Orders by the BOP.

He has been harassed by other inmates, constantly in fear for his safety, extorted by other inmates

and physically harmed while in custody.  He has been subjected to unusually harsh conditions of

confinement including 24 hour seclusion in the SHU as a result of his erroneous sexual offender

designation.  This has also contributed to a decline in his mental health.

The Court may note that the BOP records indicate that Mr. Fields denied any mental health

issues when examined.  Mr. Fields denies the accuracy of this statement.  However, if Mr. Fields

may have stated this at some point to BOP staff, this is not uncommon.  In an article published in

the Washington University Journal of Law & Policy, Stuart Grassian noted:

> Many inmates housed in stringent conditions are extremely fearful of acknowledging the
> psychological harm or stress they are experiencing as a result of such confinement.  This
> reluctance of inmates in solitary confinement is a response to the perception that such
> confinement is an overt attempt by authorities to 'break them down' psychologically, and
> in my experience, tends to be more severe when the inmates experiences the stringencies
> of his confinement as being the product of an arbitrary exercise of power, rather than the
> fair result of an inherently reasonable process.

Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash.U.J.L.& Pol'y 325 (2006),

p. 333.

In 1995 the United State District Court of the Northern District of California found that

placement in the SHU constituted cruel and unusual treatment for those suffering from certain

mental illnesses, including, borderline personality disorder, brain damage, mental retardation,

chronic depression and/or impulse control disorders.  *Madrid v. Gomez*, 889 F.Supp. 1146 (N.D.

Cal. 1995).  "The restriction of environmental stimulation and social isolation associated with

confinement in solitary are strikingly toxic to mental functioning, producing a stuporous condition associated with perceptual and cognitive impairment and affective disturbances." *Grassian*, at 354. "Moreover, the harm caused by such confinement may result in prolonged or permanent psychiatric disability, including impairments which may seriously reduce the inmate's capacity to reintegrate into the broader community upon release from prison." Id.

It was this Court's desire when sentencing Mr. Fields that he obtain the mental health and substance abuse treatment he so desperately needed. T. resentencing pp. 14-15. Instead, Mr. Fields has been housed in solitary confinement for the better part of seven years without proper treatment likely exacerbating his pre-existing mental health condition. The circumstances of his confinement have not made him better, they may be making him worse. "Depriving people of normal social contact and meaningful social interaction over long periods of time can damage or distort their social identities, destabilize their sense of self, and, for some, destroy their ability to function normally in free society." Haney, Craig, Restricting the Use of Solitary Confinement, Annu. Rev. Criminal. 2018 1:285-310, p. 296. Allowing this to continue is not a viable option as Mr. Fields will eventually be released back into society. Proper treatment, outside the confines of solitary confinement, is the only option. This treatment can only be obtained outside of the BOP.

### Assessing the factors pursuant to § 3553(a)

We acknowledge that other § 3553(a) factors – specifically the need to promote respect for the law and deterrence – weighed in favor of incarceration at the time of sentencing and were instrumental in the Court's sentencing decision. But the calculus on those factors has changed dramatically with the BOP's failure to comply with this Court's Orders and failure to provide any rehabilitative services to Mr. Fields. The deterrent effect of the harsh terms of his incarceration to date has had the desired effect of Mr. Fields to never to see another federal courtroom as a

defendant. Further, the Court's imposed serious sentence has been a powerful statement of the need for respect for the law – and already achieved the necessary measure of general deterrence. A further factor to consider is that Mr. Fields has served the majority of his sentence. His expected release date is 07/05/23. He is eligible to be released by the BOP on bracelet monitoring on 01/30/23. This request for compassionate release would result in a release approximately 20 months early. Mr. Fields would have served approximately eight years of his ten year sentence or 80% of his sentence. Further, to his credit, Mr. Fields is seeking release to a treatment facility as he recognizes that he has yet to receive any treatment and rehabilitation for his serious drug addiction and he desires this treatment before returning to society.

### Conclusion

In light of the foregoing, we respectfully ask the Court to exercise its discretion and save Mr. Fields from further harm at the hands of the Bureau of Prisons by way of isolation, directly caused by the errors and failures of the BOP. We respectfully request that This Honorable Court grant Mr. Fields' request for compassionate release.

If this Court is not inclined to grant this relief based upon the pleadings, the Defendant requests a hearing.

Respectfully submitted,
Joshua Fields, Defendant
By and through his attorneys

Date: April 23, 2021

/s/ Jaye L. Rancourt
Jaye L. Rancourt, Esquire
NHBA# 14235
Brennan, Lenehan, Iacopino & Hickey
85 Brook Street
Manchester, NH 03104
T: (603) 668-8300
F: (603) 668-1029
**jrancourt@brennanlenehan.com**

13

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing Motion for Compassionate has been forwarded, even date herewith, and in the manner specified herein:  electronically served through ECF:  Assistant United States Attorney Seth Aframe, United States Attorney's Office, James C. Cleveland Federal Bldg., 55 Pleasant St., Room 352, Concord, New Hampshire 03301-3941 and U.S. Probation.


                                      /s/ Jaye L. Rancourt
                                      Jaye L. Rancourt, Esquire

14